# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FREE SPEECH COALITION, INC.,
   et al.

    *Plaintiffs*,

      v.               No. 4:24-cv-00514-MW-MAF

ASHLEY MOODY, in her official
   capacity as Attorney General
   for the State of Florida,

    *Defendant*.

_____/

## DEFENDANT'S MOTION TO STAY PENDING SUPREME COURT'S RULING IN *FREE SPEECH COALITION, INC. v. PAXTON*, NO. 23-1122

Defendant Ashley Moody, Attorney General for the State of Florida, moves this Court to stay this case until the Supreme Court decides *Free Speech Coalition, Inc. v. Paxton*, No. 23-1122, which is scheduled to be argued January 15, 2025, and likely to be decided by the beginning of July 2025. The principal count of Plaintiffs' complaint is Count I, in which they challenge the online age-verification regime in Florida's HB 3 on First Amendment grounds. The petitioners in *Paxton* are challenging a similar online age-verification regime in Texas's HB 1181, and the

1

Supreme Court has granted certiorari on the question of whether that regime complies with the First Amendment. The Supreme Court's opinion in *Paxton* thus will likely resolve Count I of Plaintiffs' complaint or at least clarify how best to proceed with that count, conserving the parties' as well as the Court's resources and helping considerably to narrow the disputed issues in this case.

Nor would a stay, which would permit HB 3 to go into effect on January 1, be unfair to Plaintiffs. Both the Fifth Circuit and the Supreme Court have allowed Texas's statute to remain in effect while the Supreme Court is considering its constitutionality. The Seventh Circuit has followed suit, allowing a similar Indiana law to remain in effect pending *Paxton*. On top of that, the Free Speech Coalition—which is the lead plaintiff in the Texas and Indiana cases—has "opposed" HB 3 since "it was introduced" in the Florida Legislature and, when HB 3 was passed in March 2024, promised to "fight" the law.[1] Nevertheless, the Coalition waited until the week before Christmas to file this action. That nearly ten-month delay belies any claim that a stay would prejudice Plaintiffs.

---

[1] *Florida Passes HB3*, Free Speech Coalition (Mar. 25, 2024), https://perma.cc/PD5V-ZK6P.

## MEMORANDUM

This Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Accordingly, district courts have "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001).

The general conditions for staying proceedings in a district court are "good cause" and "reasonableness." *See McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006); *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997); *Beaulieu v. Bd. of Trs. of Univ. of W. Fla.*, No. 3:07-cv-30, 2007 WL 9734885, at *6 (N.D. Fla. Sept. 18, 2007). Both conditions are satisfied here. One "good" cause for a stay, "if not an excellent one," is "to await a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th

Cir. 2009); *see also Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (per curiam) ("A variety of circumstances may justify a district court stay pending resolution of a related case in a different court."); *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) ("The inherent discretionary authority of the district court to stay litigation pending the outcome of related proceeding in another forum is not questioned."). The Supreme Court's pending decision in *Free Speech Coalition, Inc. v. Paxton*, No. 23-1122, provides that "excellent" cause in this case.

The Supreme Court granted certiorari in *Paxton* to consider whether the Fifth Circuit correctly upheld, against First Amendment challenge, a Texas statute very similar to the Florida statute Plaintiffs are challenging in this case. *See* 2023 Tex. Sess. Law Serv. ch. 676 (HB 1181) (codified at Tex. Civ. Prac. & Rem. Code Ann. § 129B.001 *et seq.*) (App. B); 2024-42 Fla. Laws § 2 (HB 3) (codified at Fla. Stat. § 501.1737) (App. A). Like Florida's HB 3, Texas's HB 1181 requires commercial entities that distribute material via the internet, more than a third of which is "harmful to minors," to take reasonable steps to verify that persons who access that material are 18 years of age or older. *See* Tex. Civ. Prac.

& Rem. Code Ann. § 129B.002(a); Fla. Stat. § 501.1737(1)(j), (2). Like the Florida statute here, the Texas statute defines "harmful to minors" with an age-variable obscenity test derived from the Supreme Court's decisions in *Ginsberg v. New York*, 390 U.S. 629 (1968), and *Miller v. California*, 413 U.S. 15 (1973). *See* Tex. Civ. Prac. & Rem. Code Ann. § 129B.001(6) (App. B); Fla. Stat. § 501.1737(1)(e). And like the Plaintiffs here, the petitioners in *Paxton* contend that this regime is a content-based restriction on speech subject to strict scrutiny. *See* Brief for Petitioners at 16–37, *Free Speech Coal., Inc. v. Paxton*, ___ U.S. ___ (Sept. 16, 2024) (No. 23-1122); Complaint ¶¶ 4, 76, *Free Speech Coalition, Inc. v. Moody*, No. 4:24-cv-514 (N.D. Fla. Dec. 16, 2024), ECF No. 1. Because of these similarities, the Supreme Court's ruling in *Paxton* is likely to have a "substantial or controlling effect" on the First Amendment claim in this case. *Miccosukee Tribe*, 559 F.3d at 1198; *see also* Order at 2, *NetChoice v. Moody*, No. 4:21-cv-220 (N.D. Fla. Aug. 25, 2021), ECF No. 129 (staying proceedings pending an appeal of a preliminary injunction because "the Eleventh Circuit decision" would "almost surely provide substantial guidance" on the issues presented).

A stay here would also be reasonable because it would not be "immoderate" in length. *Ortega Trujillo*, 221 F.3d at 1264; *CTI-Container Leasing*, 685 F.2d at 1288. A stay until the Supreme Court decides *Paxton* would be "so framed in its inception that its force will be spent within reasonable limits." *Ortega Trujillo*, 221 F.3d at 1264 (quoting *Landis*, 299 U.S. at 257). The Supreme Court will hear argument in *Paxton* in less than a month, on January 15, and in keeping with its usual practice will issue its final opinion by the beginning of July at the latest.[2] That is barely six months, after which this lawsuit could freely proceed with the benefit of the Supreme Court's authoritative ruling in that case. This length of time compares favorably with the "immoderate" stay that the Eleventh Circuit vacated in *Ortega Trujillo*, which was scheduled to "expire only after a trial" and appeal of a case overseas that was "not progressing quickly." 221 F.3d at 1264; *see also Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1524–25 (11th Cir. 1984) (reversing stay pending resolution of related state court action that

---

[2] The latest of the Supreme Court's opinions for cases argued during October Term 2023 came out on July 1 of this year. *See* Opinions of the Court – 2023, Supreme Court of the United States, https://www.supremecourt.gov/opinions/slipopinion/23.

"ha[d] been pending for 18 months" without a trial date and would "not decide the issues presented in the federal case").

A stay in this case would be even more limited than the recent stay in *National Rifle Ass'n v. Commissioner, Florida Department of Law Enforcement* ("*NRA*"), No. 21-12314 (11th Cir.), which also involves a constitutional challenge to a Florida law. The stay would last six months, whereas the stay in *NRA* lasted a year. In July 2023, less than a month after the Supreme Court granted certiorari in *United States v. Rahimi*, 602 U.S. 680 (2024), the Eleventh Circuit stayed proceedings in *NRA* until "forty (40) days after the Supreme Court issue[d] an opinion in . . . *Rahimi*" because *Rahimi*—like *Paxton* here—was likely to have a substantial effect on the issues presented. En Banc Briefing Notice, *Nat'l Rifle Ass'n v. Comm'r, Fla. Dep't of Law Enf't*, No. 21-12314 (11th Cir. July 21, 2023), ECF No. 88. After *Rahimi* was decided in late June 2024, the Eleventh Circuit proceeded with briefing and oral argument—a year after it entered the stay.

Plaintiffs can hardly contend that permitting Florida's HB 3 to take effect on January 1 and remain in effect for at least the next six months would be unfair. Both the Fifth Circuit and the Supreme Court permitted

Texas's similar statute to remain in effect while the Supreme Court considers whether that statute violates the First Amendment. In *Paxton*, as here, the plaintiffs challenged Texas's HB 1181 on First Amendment as well as vagueness and preemption grounds. *See* Complaint ¶¶ 78–90, *Free Speech Coal., Inc. v. Colmenero*, No. 1:23-cv-917 (W.D. Tex. Aug. 4, 2023), ECF No. 1. The Fifth Circuit reversed a preliminary injunction preventing enforcement of the online age-verification regime in HB 1181. *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 287 (5th Cir. 2024). The plaintiffs in *Paxton* then applied, first to the Fifth Circuit and then to the Supreme Court, for a stay pending review of their petition for a writ of certiorari in the Supreme Court. Both the Fifth Circuit and the Supreme Court denied the stay, allowing the Texas statute to remain in effect. *See* Order, *Free Speech Coal., Inc. v. Paxton*, No. 23-50627 (5th Cir. Mar. 29, 2024), ECF No. 148-1; *Free Speech Coal., Inc. v. Paxton*, 144 S. Ct. 1473 (Apr. 30, 2024) (mem.). No Justices dissented from the denial of the stay.

The Seventh Circuit similarly allowed enforcement of another similar online age-verification statute, Indiana's SB 17 (2024 Ind. Legis. Serv. 98-2024 (codified at Ind. Code § 24-4-23 *et seq*.) (App. C)), pending the outcome of *Paxton*. SB 17, like Florida's HB 3 and Texas's HB 1181,

requires a website that makes material publicly accessible via the internet, at least a third of which is "harmful to minors," to use reasonable age-verification methods to prevent minors from accessing the website. Ind. Code § 24-4-23-1, -10. Like Florida and Texas, Indiana defines "harmful to minors" in terms of the age-variable *Ginsberg/Miller* test. Ind. Code § 35-49-2-2. Plaintiffs, including the same lead plaintiff as here and in *Paxton*, challenged SB 17 on First Amendment as well as vagueness and preemption grounds. *See* Complaint ¶¶ 75–81, 96–101, *Free Speech Coal., Inc. v. Rokita*, No. 1:24-cv-980 (S.D. Ind. June 10, 2024), ECF No. 1. Following the Indiana attorney general's appeal of a preliminary injunction against enforcement of that statute, the Seventh Circuit stayed that injunction and stayed briefing in the case, pending the Supreme Court's ruling in *Paxton*. Order, *Free Speech Coal., Inc. v. Rokita*, No. 24-2174 (Aug. 16, 2024), ECF No. 16 (App. D). The Seventh Circuit noted that "Indiana's statute is functionally identical to one adopted by Texas," which "has been held to be valid." *Id.* at 1. "Free Speech Coalition, Inc., which is a plaintiff in both the Indiana case and the Texas case, asked the Supreme Court to prevent enforcement of the Texas statute while that litigation continued. That application was denied, No. 23A925

(Apr. 30, 2024), so the Texas statute is now in force." *Id.* "We do not see any adequate reason why Texas's law may be enforced pending the decision on the merits in *Free Speech Coalition v. Paxton*, while Indiana's may not be enforced. Functionally identical statutes should be treated the same while the Supreme Court considers the matter." *Id.* at 2.

That reasoning applies with equal force here. Because lower court proceedings regarding the Texas and Indiana statutes are on hold, it is only fitting that proceedings in this case also be held pending the outcome of *Paxton*.

That Plaintiffs may desire to seek preliminary relief against enforcement of the Florida statute does not counsel otherwise. But even apart from the merits, Plaintiffs' lengthy "delay" in bringing this action "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Plaintiffs had months to file their lawsuit (HB 3 was enacted on March 25) but waited until December 16, little more than two weeks before HB 3 is scheduled to go into effect, to file. There is no justification for that delay. Plaintiff Free Speech Coalition has been pressing challenges against similar laws since at least 2023. *See Free Speech Coal., Inc. v. Colmenero*, 689 F. Supp. 3d

373, 382 (W.D. Tex. 2023). And Plaintiffs were fully aware of HB 3 when it was passed: On March 25, the Coalition publicly criticized the law and promised a "fight."[3] Given their delay, Plaintiffs should not be heard to complain that it would be "unfair" to stay this case to gain the advantage of an authoritative ruling by the Supreme Court on a claim that is central to their case.

---

[3] *Florida Passes HB3*, *supra* note 1.

## CONCLUSION

For the foregoing reasons, the Court should stay this case pending the Supreme Court's ruling in *Paxton*.

Respectfully submitted December 24, 2024,

ASHLEY MOODY
  *Attorney General*

HENRY C. WHITAKER (FBN 1031175)
  *Solicitor General*
DANIEL W. BELL (FBN 1008587)
  *Chief Deputy Solicitor General*

  */s/ Nathan A. Forrester*
NATHAN A. FORRESTER (FBN 1045107)
KEVIN GOLEMBIEWSKI (FBN 1002339 )
  *Senior Deputy Solicitors General*
BRIDGET K. O'HICKEY (FBN 1048521)
  *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, FL 32399
Phone: (850) 414-3300
Facsimile: (850) 410-2672
nathan.forrester@myfloridalegal.com

*Counsel for Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned counsel certifies that he has conferred with counsel for

Plaintiffs, who oppose the relief sought by this motion.

 _/s/ Nathan A. Forrester_
Senior Deputy Solicitor General

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(F), undersigned counsel certifies that the memorandum attached to this motion contains 1864 words, as determined by the word-processing system used to prepare the memorandum. The motion contains 314 words (less than 500) and therefore is not counted as part of the memorandum.

_/s/ Nathan A. Forrester_
Senior Deputy Solicitor General

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on December 24, 2024, to all counsel of record.

_/s/ Nathan A. Forrester_
Senior Deputy Solicitor General

# Appendix A

CHAPTER 2024-42

Committee Substitute for
Committee Substitute for House Bill No. 3

An act relating to online protections for minors; creating s. 501.1736, F.S.; defining terms; requiring social media platforms to prohibit certain minors from creating new accounts; requiring social media platforms to terminate certain accounts and provide additional options for termination of such accounts; providing conditions under which social media platforms are required to prohibit certain minors from entering into contracts to become account holders; authorizing the Department of Legal Affairs to bring actions under the Florida Deceptive and Unfair Trade Practices Act for knowing or reckless violations; authorizing the department to issue and enforce civil investigative demands under certain circumstances; providing civil penalties; authorizing punitive damages under certain circumstances; providing for private causes of action; requiring that such actions be brought within a specified timeframe; providing that certain social media platforms are subject to the jurisdiction of state courts; providing that if a social media platform allows an account holder to use such platform, the parties have entered into a contract; providing construction; authorizing the department to take certain investigative and compliance actions; authorizing the department to adopt rules; creating s. 501.1737, F.S.; defining terms; requiring a commercial entity that knowingly and intentionally publishes or distributes material harmful to minors on a website or application that contains a substantial portion of such material to use certain verification methods and prevent access to such material by minors; providing applicability and construction; authorizing the department to bring actions under the Florida Deceptive and Unfair Trade Practices Act for violations; providing civil penalties; authorizing punitive damages under certain circumstances; providing for private causes of action; requiring that such actions be brought within a specified timeframe; providing that certain commercial entities are subject to the jurisdiction of state courts; providing construction; authorizing the department to take certain investigative and compliance actions; authorizing the department to adopt rules; creating s. 501.1738, F.S.; defining the term "anonymous age verification"; providing requirements for a third party conducting age verification pursuant to certain provisions; providing for severability; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Section 501.1736, Florida Statutes, is created to read:

501.1736   Social media use for minors.—

(1)   As used in this section, the term:

1

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(a)   "Account holder" means a resident who opens an account or creates a profile or is identified by the social media platform by a unique identifier while using or accessing a social media platform when the social media platform knows or has reason to believe the resident is located in this state.

(b)   "Daily active users" means the number of unique users in the United States who used the online forum, website, or application at least 80 percent of the days during the previous 12 months, or, if the online forum, website, or application did not exist during the previous 12 months, the number of unique users in the United States who used the online forum, website, or application at least 80 percent of the days during the previous month.

(c)   "Department" means the Department of Legal Affairs.

(d)   "Resident" means a person who lives in this state for more than 6 months of the year.

(e)   "Social media platform" means an online forum, website, or application that satisfies each of the following criteria:

1.   Allows users to upload content or view the content or activity of other users;

2.   Ten percent or more of the daily active users who are younger than 16 years of age spend on average 2 hours per day or longer on the online forum, website, or application on the days when using the online forum, website, or application during the previous 12 months or, if the online forum, website, or application did not exist during the previous 12 months, during the previous month;

3.   Employs algorithms that analyze user data or information on users to select content for users; and

4.   Has any of the following addictive features:

a.   Infinite scrolling, which means either:

(I)   Continuously loading content, or content that loads as the user scrolls down the page without the need to open a separate page; or

(II)   Seamless content, or the use of pages with no visible or apparent end or page breaks.

b.   Push notifications or alerts sent by the online forum, website, or application to inform a user about specific activities or events related to the user's account.

c.   Displays personal interactive metrics that indicate the number of times other users have clicked a button to indicate their reaction to content or have shared or reposted the content.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

d.  Auto-play video or video that begins to play without the user first clicking on the video or on a play button for that video.

e.  Live-streaming or a function that allows a user or advertiser to broadcast live video content in real-time.

The term does not include an online service, website, or application where the exclusive function is e-mail or direct messaging consisting of text, photographs, pictures, images, or videos shared only between the sender and the recipients, without displaying or posting publicly or to other users not specifically identified as the recipients by the sender.

(2)(a)  A social media platform shall prohibit a minor who is younger than 14 years of age from entering into a contract with a social media platform to become an account holder.

(b)  A social media platform shall:

1.  Terminate any account held by an account holder younger than 14 years of age, including accounts that the social media platform treats or categorizes as belonging to an account holder who is likely younger than 14 years of age for purposes of targeting content or advertising, and provide 90 days for an account holder to dispute such termination. Termination must be effective upon the expiration of the 90 days if the account holder fails to effectively dispute the termination.

2.  Allow an account holder younger than 14 years of age to request to terminate the account. Termination must be effective within 5 business days after such request.

3.  Allow the confirmed parent or guardian of an account holder younger than 14 years of age to request that the minor's account be terminated. Termination must be effective within 10 business days after such request.

4.  Permanently delete all personal information held by the social media platform relating to the terminated account, unless there are legal requirements to maintain such information.

(3)(a)  A social media platform shall prohibit a minor who is 14 or 15 years of age from entering into a contract with a social media platform to become an account holder, unless the minor's parent or guardian provides consent for the minor to become an account holder.

(b)  A social media platform shall:

1.  Terminate any account held by an account holder who is 14 or 15 years of age, including accounts that the social media platform treats or categorizes as belonging to an account holder who is likely 14 or 15 years of age for purposes of targeting content or advertising, if the account holder's parent or guardian has not provided consent for the minor to create or maintain the account. The social media platform shall provide 90 days for an

3

account holder to dispute such termination. Termination must be effective upon the expiration of the 90 days if the account holder fails to effectively dispute the termination.

2. Allow an account holder who is 14 or 15 years of age to request to terminate the account. Termination must be effective within 5 business days after such request.

3. Allow the confirmed parent or guardian of an account holder who is 14 or 15 years of age to request that the minor's account be terminated. Termination must be effective within 10 business days after such request.

4. Permanently delete all personal information held by the social media platform relating to the terminated account, unless there are legal requirements to maintain such information.

(4) If a court enjoins the enforcement of subsection (3) or would otherwise enjoin enforcement of any other provision of this section due to subsection (3), then subsection (3) shall be severed, and the following shall come into effect:

(a) A social media platform shall prohibit a minor who is 14 or 15 years of age from entering into a contract with a social media platform to become an account holder.

(b) A social media platform shall:

1. Terminate any account held by an account holder who is 14 or 15 years of age, including accounts that the social media platform treats or categorizes as belonging to an account holder who is likely 14 or 15 years of age for purposes of targeting content or advertising, and provide 90 days for an account holder to dispute such termination. Termination must be effective upon the expiration of 90 days if the account holder fails to effectively dispute the termination.

2. Allow an account holder who is 14 or 15 years of age to request to terminate the account. Termination must be effective within 5 business days after such request.

3. Allow the confirmed parent or guardian of an account holder who is 14 or 15 years of age to request that the minor's account be terminated. Termination must be effective within 10 business days after such request.

4. Permanently delete all personal information held by the social media platform relating to the terminated account, unless there are legal requirements to maintain such information.

(5) Any knowing or reckless violation of subsection (2), subsection (3), or, if in effect, subsection (4) is deemed an unfair and deceptive trade practice actionable under part II of this chapter solely by the department against a social media platform. If the department has reason to believe that a social

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

media platform is in violation of subsection (2), subsection (3), or, if in effect, subsection (4), the department, as the enforcing authority, may bring an action against such platform for an unfair or deceptive act or practice. For the purpose of bringing an action pursuant to this section, ss. 501.211 and 501.212 do not apply. In addition to other remedies under part II of this chapter, the department may collect a civil penalty of up to $50,000 per violation and reasonable attorney fees and court costs. When the social media platform's failure to comply with subsection (2), subsection (3), or, if in effect, subsection (4) is a consistent pattern of knowing or reckless conduct, punitive damages may be assessed against the social media platform.

(6)(a)   A social media platform that knowingly or recklessly violates subsection (2), subsection (3), or, if in effect, subsection (4) is liable to the minor account holder, including court costs and reasonable attorney fees as ordered by the court. Claimants may be awarded up to $10,000 in damages.

(b)   A civil action for a claim under this subsection must be brought within 1 year from the date the complainant knew, or reasonably should have known, of the alleged violation.

(c)   Any action brought under this subsection may only be brought on behalf of a minor account holder.

(7)   For purposes of bringing an action under this section, a social media platform that allows a minor account holder younger than 14 years of age or a minor account holder who is 14 or 15 years of age to create an account on such platform is considered to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business and doing business in this state, and is therefore subject to the jurisdiction of the courts of this state.

(8)   If a social media platform allows an account holder to use the social media platform, the parties have entered into a contract.

(9)   This section does not preclude any other available remedy at law or equity.

(10)(a)   If, by its own inquiry or as a result of complaints, the department has reason to believe that an entity or person has engaged in, or is engaging in, an act or practice that violates this section, the department may administer oaths and affirmations, subpoena witnesses or matter, and collect evidence. Within 5 days, excluding weekends and legal holidays, after the service of a subpoena or at any time before the return date specified therein, whichever is longer, the party served may file in the circuit court in the county in which it resides or in which it transacts business and serve upon the enforcing authority a petition for an order modifying or setting aside the subpoena. The petitioner may raise any objection or privilege which would be available upon service of such subpoena in a civil action. The subpoena shall inform the party served of its rights under this subsection.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

(b)  If the matter that the department seeks to obtain by subpoena is located outside the state, the entity or person subpoenaed may make it available to the department or its representative to examine the matter at the place where it is located. The department may designate representatives, including officials of the state in which the matter is located, to inspect the matter on its behalf, and may respond to similar requests from officials of other states.

(c)  Upon failure of an entity or person without lawful excuse to obey a subpoena and upon reasonable notice to all persons affected, the department may apply to the circuit court for an order compelling compliance.

(d)  The department may request that an entity or person that refuses to comply with a subpoena on the ground that testimony or matter may incriminate the entity or person be ordered by the court to provide the testimony or matter. Except in a prosecution for perjury, an entity or individual that complies with a court order to provide testimony or matter after asserting a valid privilege against self-incrimination shall not have the testimony or matter so provided, or evidence derived therefrom, received against the entity or person in any criminal investigation or proceeding.

(e)  Any entity or person upon whom a subpoena is served pursuant to this section shall comply with the terms thereof unless otherwise provided by order of the court. Any entity or person that fails to appear with the intent to avoid, evade, or prevent compliance in whole or in part with any investigation under this part or who removes from any place, conceals, withholds, mutilates, alters, or destroys, or by any other means falsifies any documentary material in the possession, custody, or control of any entity or person subject to any such subpoena, or knowingly conceals any relevant information with the intent to avoid, evade, or prevent compliance shall be liable for a civil penalty of not more than $5,000 per week in violation, reasonable attorney's fees, and costs.

(11)  The department may adopt rules to implement this section.

Section 2.  Section 501.1737, Florida Statutes, is created to read:

501.1737  Age verification for online access to materials harmful to minors.—

(1)  As used in this section, the term:

(a)  "Anonymous age verification" has the same meaning as in s. 501.1738.

(b)  "Commercial entity" includes a corporation, a limited liability company, a partnership, a limited partnership, a sole proprietorship, and any other legally recognized entity.

(c)  "Department" means the Department of Legal Affairs.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

(d)   "Distribute" means to issue, sell, give, provide, deliver, transfer, transmit, circulate, or disseminate by any means.

(e)   "Material harmful to minors" means any material that:

1.   The average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest;

2.   Depicts or describes, in a patently offensive way, sexual conduct as specifically defined in s. 847.001(19); and

3.   When taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

(f)   "News-gathering organization" means any of the following:

1.   A newspaper, news publication, or news source, printed or published online or on a mobile platform, engaged in reporting current news and matters of public interest, and an employee thereof who can provide documentation of such employment.

2.   A radio broadcast station, television broadcast station, cable television operator, or wire service, and an employee thereof who can provide documentation of such employment.

(g)   "Publish" means to communicate or make information available to another person or entity on a publicly available website or application.

(h)   "Resident" means a person who lives in this state for more than 6 months of the year.

(i)   "Standard age verification" means any commercially reasonable method of age verification approved by the commercial entity.

(j)   "Substantial portion" means more than 33.3 percent of total material on a website or application.

(2)   A commercial entity that knowingly and intentionally publishes or distributes material harmful to minors on a website or application, if the website or application contains a substantial portion of material harmful to minors, must use either anonymous age verification or standard age verification to verify that the age of a person attempting to access the material is 18 years of age or older and prevent access to the material by a person younger than 18 years of age. The commercial entity must offer anonymous age verification and standard age verification, and a person attempting to access the material may select which method will be used to verify his or her age.

(3)   A commercial entity must ensure that the requirements of s. 501.1738 are met.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(4)(a)   This section does not apply to any bona fide news or public interest broadcast, website video, report, or event and does not affect the rights of a news-gathering organization.

(b)   An Internet service provider or its affiliates or subsidiaries, a search engine, or a cloud service provider does not violate this section solely for providing access or connection to or from a website or other information or content on the Internet or a facility, system, or network not under the provider's control, including transmission, downloading, intermediate storage, or access software, to the extent the provider is not responsible for the creation of the content of the communication which constitutes material harmful to minors.

(5)(a)   Any violation of subsection (2) or subsection (3) is deemed an unfair and deceptive trade practice actionable under part II of this chapter solely by the department on behalf of a resident minor against a commercial entity. If the department has reason to believe that a commercial entity is in violation of subsection (2) or subsection (3), the department, as the enforcing authority, may bring an action against the commercial entity for an unfair or deceptive act or practice. For the purpose of bringing an action pursuant to this section, ss. 501.211 and 501.212 do not apply. In addition to any other remedy under part II of this chapter, the department may collect a civil penalty of up to $50,000 per violation and reasonable attorney fees and court costs. When the commercial entity's failure to comply with subsection (2) or subsection (3) is a consistent pattern of conduct of the commercial entity, punitive damages may be assessed against the commercial entity.

(b)   A third party that performs age verification for a commercial entity in violation of s. 501.1738 is deemed to have committed an unfair and deceptive trade practice actionable under part II of this chapter solely by the department against such third party. If the department has reason to believe that the third party is in violation of s. 501.1738, the department, as the enforcing authority, may bring an action against such third party for an unfair or deceptive act or practice. For the purpose of bringing an action pursuant to this section, ss. 501.211 and 501.212 do not apply. In addition to other remedies under part II of this chapter, the department may collect a civil penalty of up to $50,000 per violation and reasonable attorney fees and court costs.

(c)   A commercial entity that violates subsection (2) for failing to prohibit access or prohibit a minor from future access to material harmful to minors after a report of unauthorized or unlawful access is liable to the minor for such access, including court costs and reasonable attorney fees as ordered by the court. Claimants may be awarded up to $10,000 in damages. A civil action for a claim under this paragraph must be brought within 1 year from the date the complainant knew, or reasonably should have known, of the alleged violation.

(d)   Any action under this subsection may only be brought on behalf of or by a resident minor.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

(6)   For purposes of bringing an action under subsection (5), a commercial entity that publishes or distributes material harmful to minors on a website or application, if the website or application contains a substantial portion of material harmful to minors and such website or application is available to be accessed in this state, is considered to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business and doing business in this state, and is therefore subject to the jurisdiction of the courts of this state.

(7)   This section does not preclude any other available remedy at law or equity.

(8)(a)   If, by its own inquiry or as a result of complaints, the department has reason to believe that an entity or person has engaged in, or is engaging in, an act or practice that violates this section, the department may administer oaths and affirmations, subpoena witnesses or matter, and collect evidence. Within 5 days, excluding weekends and legal holidays, after the service of a subpoena or at any time before the return date specified therein, whichever is longer, the party served may file in the circuit court in the county in which it resides or in which it transacts business and serve upon the enforcing authority a petition for an order modifying or setting aside the subpoena. The petitioner may raise any objection or privilege which would be available upon service of such subpoena in a civil action. The subpoena shall inform the party served of its rights under this subsection.

(b)   If the matter that the department seeks to obtain by subpoena is located outside the state, the entity or person subpoenaed may make it available to the department or its representative to examine the matter at the place where it is located. The department may designate representatives, including officials of the state in which the matter is located, to inspect the matter on its behalf, and may respond to similar requests from officials of other states.

(c)   Upon failure of an entity or person without lawful excuse to obey a subpoena and upon reasonable notice to all persons affected, the department may apply to the circuit court for an order compelling compliance.

(d)   The department may request that an entity or person that refuses to comply with a subpoena on the ground that testimony or matter may incriminate the entity or person be ordered by the court to provide the testimony or matter. Except in a prosecution for perjury, an entity or individual that complies with a court order to provide testimony or matter after asserting a valid privilege against self-incrimination shall not have the testimony or matter so provided, or evidence derived therefrom, received against the entity or person in any criminal investigation or proceeding.

(e)   Any entity or person upon whom a subpoena is served pursuant to this section shall comply with the terms thereof unless otherwise provided by order of the court. Any entity or person that fails to appear with the intent to avoid, evade, or prevent compliance in whole or in part with any

9

investigation under this part or that removes from any place, conceals, withholds, mutilates, alters, or destroys, or by any other means falsifies any documentary material in the possession, custody, or control of any entity or person subject to any such subpoena, or knowingly conceals any relevant information with the intent to avoid, evade, or prevent compliance, shall be liable for a civil penalty of not more than $5,000 per week in violation, reasonable attorney's fees, and costs.

(9)   The department may adopt rules to implement this section.

Section 3.   Section 501.1738, Florida Statutes, is created to read:

501.1738   Anonymous age verification.—

(1)   As used in this section, the term "anonymous age verification" means a commercially reasonable method used by a government agency or a business for the purpose of age verification which is conducted by a nongovernmental, independent third party organized under the laws of a state of the United States which:

(a)   Has its principal place of business in a state of the United States; and

(b)   Is not owned or controlled by a company formed in a foreign country, a government of a foreign country, or any other entity formed in a foreign country.

(2)   A third party conducting anonymous age verification pursuant to this section:

(a)   May not retain personal identifying information used to verify age once the age of an account holder or a person seeking an account has been verified.

(b)   May not use personal identifying information used to verify age for any other purpose.

(c)   Must keep anonymous any personal identifying information used to verify age. Such information may not be shared or otherwise communicated to any person.

(d)   Must protect personal identifying information used to verify age from unauthorized or illegal access, destruction, use, modification, or disclosure through reasonable security procedures and practices appropriate to the nature of the personal information.

Section 4.   If any provision of this act or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of this act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

Section 5.   This act shall take effect January 1, 2025.

Approved by the Governor March 25, 2024.

Filed in Office Secretary of State March 25, 2024.

CODING: Words stricken are deletions; words underlined are additions.

# Appendix B

By:  Shaheen                                                    H.B. No. 1181

Substitute the following for H.B. No. 1181:

By:  Leach                                                  C.S.H.B. No. 1181


A BILL TO BE ENTITLED

1                                    AN ACT

2    relating to restricting access to sexual material harmful to minors

3    on an Internet website.

4         BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5         SECTION 1.  Title 6, Civil Practice and Remedies Code, is

6    amended by adding Chapter 129B to read as follows:

7    CHAPTER 129B.  LIABILITY FOR ALLOWING MINORS TO ACCESS PORNOGRAPHIC

8                                  MATERIAL

9         Sec. 129B.001.  DEFINITIONS.  In this chapter:

10             (1)  "Commercial   entity"   includes   a   corporation,

11    limited liability company, partnership, limited partnership, sole

12    proprietorship, or other legally recognized business entity.

13             (2)  "Distribute" means to issue, sell, give, provide,

14    deliver, transfer, transmute, circulate, or disseminate by any

15    means.

16             (3)  "Minor" means an individual younger than 18 years

17    of age.

18             (4)  "News-gathering organization" includes:

19                  (A)  an employee of a newspaper, news publication,

20    or news source, printed or on an online or mobile platform, of

21    current news and public interest, who is acting within the course

22    and scope of that employment and can provide documentation of that

23    employment with the newspaper, news publication, or news source;

24    and

C.S.H.B. No. 1181

1    (B)   an employee of a radio broadcast station,

2  television broadcast station, cable television operator, or wire

3  service who is acting within the course and scope of that employment

4  and can provide documentation of that employment.

5    (5)   "Publish" means to communicate or make information

6  available to another person or entity on a publicly available

7  Internet website.

8    (6)   "Sexual material harmful to minors" includes any

9  material that:

10    (A)   the average person, applying contemporary

11  community standards, would find, taking the material as a whole and

12  with respect to minors, is designed to appeal to or pander to the

13  prurient interest;

14    (B)   in a manner patently offensive with respect

15  to minors, exploits, is devoted to, or principally consists of

16  descriptions of actual, simulated, or animated display or depiction

17  of:

18    (i)   a person's pubic hair, anus, or genitals

19  or the nipple of the female breast;

20    (ii)   touching, caressing, or fondling of

21  nipples, breasts, buttocks, anuses, or genitals; or

22    (iii)   sexual intercourse, masturbation,

23  sodomy, bestiality, oral copulation, flagellation, excretory

24  functions, exhibitions, or any other sexual act; and

25    (C)   taken as a whole, lacks serious literary,

26  artistic, political, or scientific value for minors.

27    (7)   "Transactional data" means a sequence of

C.S.H.B. No. 1181

1  information that documents an exchange, agreement, or transfer

2  between an individual, commercial entity, or third party used for

3  the purpose of satisfying a request or event. The term includes

4  records from mortgage, education, and employment entities.

5      Sec. 129B.002.  PUBLICATION OF MATERIAL HARMFUL TO MINORS.

6  (a)  A commercial entity that knowingly and intentionally publishes

7  or distributes material on an Internet website, including a social

8  media platform,  more than one-third of which is sexual material

9  harmful to minors, shall use reasonable age verification methods as

10  described by Section 129B.003 to verify that an individual

11  attempting to access the material is 18 years of age or older.

12      (b)  A commercial entity that performs the age verification

13  required by Subsection (a) or a third party that performs the age

14  verification required by Subsection (a) may not retain any

15  identifying information of the individual after access has been

16  granted to the material.

17      (c)  A commercial entity that knowingly and intentionally

18  publishes or distributes material on an Internet website that is

19  found to have violated this section is liable to the parent or

20  guardian of the minor for damages resulting from a minor's access to

21  the material, including court costs and reasonable attorney's fees

22  as ordered by the court.

23      (d)  A commercial entity that knowingly and intentionally

24  publishes or distributes material on an Internet website, or a

25  third party that performs the age verification required by

26  Subsection (a) that is found to have knowingly retained identifying

27  information of an individual after access has been granted to the

C.S.H.B. No. 1181

1    individual is liable to the individual for damages resulting from

2    retaining the identifying information, including court costs and

3    reasonable attorney's fees as ordered by the court.

4        Sec. 129B.003.  REASONABLE AGE VERIFICATION METHODS.  (a)

5    In this section, "digital identification" means information stored

6    on a digital network that may be accessed by a commercial entity and

7    that serves as proof of the identity of an individual.

8        (b)  A commercial entity that knowingly and intentionally

9    publishes or distributes material on an Internet website or a third

10   party that performs age verification under this chapter shall

11   require an individual to:

12           (1)  provide digital identification; or

13           (2)  comply with a commercial age verification system

14   that verifies age using:

15               (A)  government-issued identification; or

16               (B)  a commercially reasonable method that relies

17   on public or private transactional data to verify the age of an

18   individual.

19       Sec. 129B.004.  APPLICABILITY OF CHAPTER.  (a)  This chapter

20   does not apply to a bona fide news or public interest broadcast,

21   website video, report, or event and may not be construed to affect

22   the rights of a news-gathering organization.

23       (b)  An Internet service provider, or its affiliates or

24   subsidiaries, a search engine, or a cloud service provider may not

25   be held to have violated this chapter solely for providing access or

26   connection to or from a website or other information or content on

27   the Internet or on a facility, system, or network not under that

1  provider's control, including transmission, downloading,

2  intermediate storage, access software, or other services to the

3  extent the provider or search engine is not responsible for the

4  creation of the content that constitutes sexual material harmful to

5  minors.

6      SECTION 2.  This Act takes effect September 1, 2023.

# Appendix C

Second Regular Session of the 123rd General Assembly (2024)

PRINTING CODE. Amendments: Whenever an existing statute (or a section of the Indiana Constitution) is being amended, the text of the existing provision will appear in this style type, additions will appear in **this style type**, and deletions will appear in ~~this style type.~~

  Additions: Whenever a new statutory provision is being enacted (or a new constitutional provision adopted), the text of the new provision will appear in **this style type**. Also, the word **NEW** will appear in that style type in the introductory clause of each SECTION that adds a new provision to the Indiana Code or the Indiana Constitution.

  Conflict reconciliation: Text in a statute in *this style type* or ~~*this style type*~~ reconciles conflicts between statutes enacted by the 2023 Regular Session of the General Assembly.

# SENATE ENROLLED ACT No. 17

---

AN ACT to amend the Indiana Code concerning trade regulation.

*Be it enacted by the General Assembly of the State of Indiana:*

SECTION 1. IC 24-4-23 IS ADDED TO THE INDIANA CODE AS A **NEW** CHAPTER TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2024]:

**Chapter 23. Age Verification for Adult Oriented Websites**

**Sec. 1. "Adult oriented website" means a publicly accessible website that publishes material harmful to minors, if at least one-third (1/3) of the images and videos published on the website depict material harmful to minors.**

**Sec. 2. "Adult oriented website operator" means a person that owns or operates an adult oriented website. The term does not include the following:**

**(1) A newspaper or news service that publishes news related information through a website.**

**(2) A cloud service provider.**

**(3) An Internet provider, an affiliate or subsidiary of an Internet provider, or a search engine that:**

**(A) solely provides access or connection to a website or other Internet content that is not under the control of that Internet service provider, affiliate or subsidiary, or search engine; and**

**(B) is not responsible for creating or publishing the content that constitutes material harmful to minors.**

SEA 17 — Concur

Sec. 3. "Material harmful to minors" means matter or a performance described in IC 35-49-2-2.

Sec. 4. "Minor" means a person less than eighteen (18) years of age.

Sec. 5. "Mobile credential" has the meaning set forth in IC 9-13-2-103.4.

Sec. 6. "Person" means a human being, a corporation, a limited liability company, a partnership, an unincorporated association, or a governmental entity.

Sec. 7. "Reasonable age verification method" means a method of determining that an individual seeking to access a website containing material harmful to minors is not a minor by using one (1) or more of the following methods:

(1) A mobile credential.

(2) An independent third party age verification service that compares the identifying information entered by the individual who is seeking access with material that is available from a commercially available data base, or an aggregate of data bases, that is regularly used by government agencies and businesses for the purpose of age and identity verification.

(3) Any commercially reasonable method that relies on public or private transactional data to verify the age of the individual attempting to access the material.

Sec. 8. "Transactional data" means a sequence of information that documents an exchange, agreement, or transfer between an individual, commercial entity, or third party used for the purpose of satisfying a request or event. The term includes records that relate to a mortgage, education, or employment.

Sec. 9. "Verification information" means all information, data, and documents provided by an individual for the purposes of verification of identity or age under this chapter.

Sec. 10. An adult oriented website operator may not knowingly or intentionally publish an adult oriented website unless the adult oriented website operator uses a reasonable age verification method to prevent a minor from accessing the adult oriented website.

Sec. 11. (a) If:

(1) an adult oriented website operator knowingly or intentionally publishes an adult oriented website in violation of section 10 of this chapter; and

(2) a minor accesses the adult oriented website;

the parent or guardian of the minor who accessed the adult

oriented website may bring an action against the adult oriented website operator.

(b) A parent or guardian who prevails in an action described in this section is entitled to:

(1) either:

(A) actual damages; or

(B) damages of up to five thousand dollars ($5,000);

(2) injunctive relief; and

(3) court costs, reasonable attorney's fees, and other reasonable expenses of litigation, including expert witness fees.

Sec. 12. (a) If an adult oriented website operator publishes an adult oriented website in violation of section 10 of this chapter, any person may bring an action to seek injunctive relief.

(b) A person that brings an action for injunctive relief under this section and prevails is entitled to:

(1) injunctive relief; and

(2) court costs, reasonable attorney's fees, and other reasonable expenses of litigation, including expert witness fees.

Sec. 13. (a) This section applies to a person that uses or purports to use a reasonable age verification method to grant or deny access to an adult oriented website.

(b) A person to which this section applies, and any third party verification service used by a person to which this section applies, may not retain identifying information of the person seeking access to an adult oriented website, unless retention of the identifying information is required by a court order.

(c) An individual whose identifying information is retained in violation of this section may bring an action against the person that unlawfully retained the individual's identifying information. An individual who prevails in an action described in this section is entitled to:

(1) either:

(A) actual damages; or

(B) damages of up to five thousand dollars ($5,000);

(2) injunctive relief; and

(3) court costs, reasonable attorney's fees, and other reasonable expenses of litigation, including expert witness fees.

Sec. 14. Adult oriented website operators must use commercially reasonable methods to secure all information collected and

4

transmitted under this chapter.

Sec. 15. The attorney general may bring an action under this chapter to obtain any or all of the following against an adult oriented website, accessible by an Indiana resident, that does not implement or properly use a reasonable age verification method:

(1) An injunction to enjoin future violations of this chapter.

(2) A civil penalty of not more than two hundred fifty thousand dollars ($250,000).

(3) The attorney general's reasonable costs in:

(A) the investigation of the violations under this chapter; and

(B) maintaining the action.

Sec. 16. When the attorney general has reasonable cause to believe that any person has engaged in, is engaging in, or is about to engage in a violation of this chapter, the attorney general is empowered to issue civil investigative demands under IC 4-6-3-3 to investigate the suspected violation.

Sec. 17. In an action filed under sections 11, 12, 13, and 15 of this chapter, the verification information of a minor who accessed the adult oriented website shall remain confidential. The clerk of the court shall place all records of the minor who accessed the adult oriented website in an envelope marked "confidential" inside the court's file pertaining to the minor. Records placed in the confidential envelope may only be released to:

(1) the judge or any authorized staff member;

(2) a party and the party's attorney;

(3) the parents of a minor who accessed the adult oriented website; or

(4) any person having a legitimate interest in the work of the court or in a particular case as determined by the presiding judge or their successor who shall consider the best interests, safety, and welfare of the minor.

SECTION 2. IC 24-4.9-2-10, AS ADDED BY P.L.125-2006, SECTION 6, IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2024]: Sec. 10. "Personal information" means:

(1) a Social Security number that is not encrypted or redacted; ~~or~~

(2) an individual's first and last names, or first initial and last name, and one (1) or more of the following data elements that are not encrypted or redacted:

(A) A driver's license number.

(B) A state identification card number.

(C) A credit card number.

5

(D) A financial account number or debit card number in combination with a security code, password, or access code that would permit access to the person's account; **or**

**(3) information collected by an adult oriented website operator, or their designee, under IC 24-4-23.**

The term does not include information that is lawfully obtained from publicly available information or from federal, state, or local government records lawfully made available to the general public.

SECTION 3. IC 24-5-0.5-3, AS AMENDED BY P.L.34-2022, SECTION 7, IS AMENDED TO READ AS FOLLOWS [EFFECTIVE JULY 1, 2024]: Sec. 3. (a) A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations.

(b) Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

(2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

(3) That such subject of a consumer transaction is new or unused, if it is not and if the supplier knows or should reasonably know that it is not.

(4) That such subject of a consumer transaction will be supplied to the public in greater quantity than the supplier intends or reasonably expects.

(5) That replacement or repair constituting the subject of a consumer transaction is needed, if it is not and if the supplier knows or should reasonably know that it is not.

(6) That a specific price advantage exists as to such subject of a consumer transaction, if it does not and if the supplier knows or should reasonably know that it does not.

(7) That the supplier has a sponsorship, approval, or affiliation in such consumer transaction the supplier does not have, and which the supplier knows or should reasonably know that the supplier

does not have.

(8) That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false.

(9) That the consumer will receive a rebate, discount, or other benefit as an inducement for entering into a sale or lease in return for giving the supplier the names of prospective consumers or otherwise helping the supplier to enter into other consumer transactions, if earning the benefit, rebate, or discount is contingent upon the occurrence of an event subsequent to the time the consumer agrees to the purchase or lease.

(10) That the supplier is able to deliver or complete the subject of the consumer transaction within a stated period of time, when the supplier knows or should reasonably know the supplier could not. If no time period has been stated by the supplier, there is a presumption that the supplier has represented that the supplier will deliver or complete the subject of the consumer transaction within a reasonable time, according to the course of dealing or the usage of the trade.

(11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it.

(12) That the replacement or repair constituting the subject of a consumer transaction can be made by the supplier for the estimate the supplier gives a customer for the replacement or repair, if the specified work is completed and:

    (A) the cost exceeds the estimate by an amount equal to or greater than ten percent (10%) of the estimate;

    (B) the supplier did not obtain written permission from the customer to authorize the supplier to complete the work even if the cost would exceed the amounts specified in clause (A);

    (C) the total cost for services and parts for a single transaction is more than seven hundred fifty dollars ($750); and

    (D) the supplier knew or reasonably should have known that the cost would exceed the estimate in the amounts specified in clause (A).

(13) That the replacement or repair constituting the subject of a consumer transaction is needed, and that the supplier disposes of the part repaired or replaced earlier than seventy-two (72) hours after both:

    (A) the customer has been notified that the work has been

completed; and

(B) the part repaired or replaced has been made available for examination upon the request of the customer.

(14) Engaging in the replacement or repair of the subject of a consumer transaction if the consumer has not authorized the replacement or repair, and if the supplier knows or should reasonably know that it is not authorized.

(15) The act of misrepresenting the geographic location of the supplier by listing an alternate business name or an assumed business name (as described in IC 23-0.5-3-4) in a local telephone directory if:

(A) the name misrepresents the supplier's geographic location;

(B) the listing fails to identify the locality and state of the supplier's business;

(C) calls to the local telephone number are routinely forwarded or otherwise transferred to a supplier's business location that is outside the calling area covered by the local telephone directory; and

(D) the supplier's business location is located in a county that is not contiguous to a county in the calling area covered by the local telephone directory.

(16) The act of listing an alternate business name or assumed business name (as described in IC 23-0.5-3-4) in a directory assistance data base if:

(A) the name misrepresents the supplier's geographic location;

(B) calls to the local telephone number are routinely forwarded or otherwise transferred to a supplier's business location that is outside the local calling area; and

(C) the supplier's business location is located in a county that is not contiguous to a county in the local calling area.

(17) The violation by a supplier of IC 24-3-4 concerning cigarettes for import or export.

(18) The act of a supplier in knowingly selling or reselling a product to a consumer if the product has been recalled, whether by the order of a court or a regulatory body, or voluntarily by the manufacturer, distributor, or retailer, unless the product has been repaired or modified to correct the defect that was the subject of the recall.

(19) The violation by a supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227.

(20) The violation by a supplier of the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.), including any

rules or regulations issued under the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.).

(21) A violation of IC 24-5-7 (concerning health spa services), as set forth in IC 24-5-7-17.

(22) A violation of IC 24-5-8 (concerning business opportunity transactions), as set forth in IC 24-5-8-20.

(23) A violation of IC 24-5-10 (concerning home consumer transactions), as set forth in IC 24-5-10-18.

(24) A violation of IC 24-5-11 (concerning real property improvement contracts), as set forth in IC 24-5-11-14.

(25) A violation of IC 24-5-12 (concerning telephone solicitations), as set forth in IC 24-5-12-23.

(26) A violation of IC 24-5-13.5 (concerning buyback motor vehicles), as set forth in IC 24-5-13.5-14.

(27) A violation of IC 24-5-14 (concerning automatic dialing-announcing devices), as set forth in IC 24-5-14-13.

(28) A violation of IC 24-5-15 (concerning credit services organizations), as set forth in IC 24-5-15-11.

(29) A violation of IC 24-5-16 (concerning unlawful motor vehicle subleasing), as set forth in IC 24-5-16-18.

(30) A violation of IC 24-5-17 (concerning environmental marketing claims), as set forth in IC 24-5-17-14.

(31) A violation of IC 24-5-19 (concerning deceptive commercial solicitation), as set forth in IC 24-5-19-11.

(32) A violation of IC 24-5-21 (concerning prescription drug discount cards), as set forth in IC 24-5-21-7.

(33) A violation of IC 24-5-23.5-7 (concerning real estate appraisals), as set forth in IC 24-5-23.5-9.

(34) A violation of IC 24-5-26 (concerning identity theft), as set forth in IC 24-5-26-3.

(35) A violation of IC 24-5.5 (concerning mortgage rescue fraud), as set forth in IC 24-5.5-6-1.

(36) A violation of IC 24-8 (concerning promotional gifts and contests), as set forth in IC 24-8-6-3.

(37) A violation of IC 21-18.5-6 (concerning representations made by a postsecondary credit bearing proprietary educational institution), as set forth in IC 21-18.5-6-22.5.

(38) A violation of IC 24-5-15.5 (concerning collection actions of a plaintiff debt buyer), as set forth in IC 24-5-15.5-6.

(39) A violation of IC 24-14 (concerning towing services), as set forth in IC 24-14-10-1.

(40) A violation of IC 24-5-14.5 (concerning misleading or

inaccurate caller identification information), as set forth in IC 24-5-14.5-12.

(41) A violation of IC 24-5-27 (concerning intrastate inmate calling services), as set forth in IC 24-5-27-27.

**(42) A violation of IC 24-4-23 (concerning the security of information collected and transmitted by an adult oriented website operator), as set forth in IC 24-4-23-14.**

(c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such representation thereon or therein, or who authored such materials, and such other suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false.

(d) If a supplier shows by a preponderance of the evidence that an act resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, such act shall not be deceptive within the meaning of this chapter.

(e) It shall be a defense to any action brought under this chapter that the representation constituting an alleged deceptive act was one made in good faith by the supplier without knowledge of its falsity and in reliance upon the oral or written representations of the manufacturer, the person from whom the supplier acquired the product, any testing organization, or any other person provided that the source thereof is disclosed to the consumer.

(f) For purposes of subsection (b)(12), a supplier that provides estimates before performing repair or replacement work for a customer shall give the customer a written estimate itemizing as closely as possible the price for labor and parts necessary for the specific job before commencing the work.

(g) For purposes of subsection (b)(15) and (b)(16), a telephone company or other provider of a telephone directory or directory assistance service or its officer or agent is immune from liability for publishing the listing of an alternate business name or assumed business name of a supplier in its directory or directory assistance data base unless the telephone company or other provider of a telephone directory or directory assistance service is the same person as the supplier who has committed the deceptive act.

(h) For purposes of subsection (b)(18), it is an affirmative defense to any action brought under this chapter that the product has been altered by a person other than the defendant to render the product completely incapable of serving its original purpose.

**SEA 17 — Concur**

_____
President of the Senate


_____
President Pro Tempore


_____
Speaker of the House of Representatives


_____
Governor of the State of Indiana


Date: _____    Time: _____

# Appendix D

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

August 16, 2024

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

| | |
|---|---|
| No. 24-2174<br><br>FREE SPEECH COALITION, INC., *et al.*,<br>　*Plaintiffs-Appellees*,<br><br>　　　*v.*<br><br>TODD ROKITA,<br>　*Defendant-Appellant*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:24-cv-00989-RLY-MG<br><br>Richard J. Young,<br>*Judge*. |

## O R D E R

Indiana seeks a stay of the preliminary injunction that a district court entered preventing the enforcement of Ind. Code §24-4-23, which requires web sites to limit minors' access to certain sexual materials.

Indiana's statute is functionally identical to one adopted by Texas. That statute has been held to be valid. *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263 (5th Cir. 2024), cert. granted, No. 23–1122 (July 2, 2024). Free Speech Coalition, Inc., which is a plaintiff in both the Indiana case and the Texas case, asked the Supreme Court to prevent enforcement of the Texas statute while that litigation continued. That application was denied, No. 23A925 (Apr. 30, 2024), so the Texas statute is now in force.

We do not see any adequate reason why Texas's law may be enforced pending the decision on the merits in *Free Speech Coalition v. Paxton*, while Indiana's may not be enforced. Functionally identical statutes should be treated the same while the Supreme Court considers the matter. Accordingly, Indiana's request for a stay is granted. The stay will remain in effect until the Supreme Court has issued its mandate in *Free Speech Coalition v. Paxton*.

Briefing in this appeal will be deferred until the Supreme Court has decided *Free Speech Coalition v. Paxton*. Within 14 days of that decision's release, the parties must file status reports advising this court of their view about how we should proceed.

ROVNER, *Circuit Judge,* concurring in part, dissenting in part.

I can certainly see the value in terms of judicial efficiency and deference in the approach taken by the majority here, and it has an intuitive appeal. Because of the opposite procedural postures of the two cases, however, granting the stay here upends the status quo and imposes a burden on the plaintiffs that cannot be justified by the Supreme Court's summary denial of the stay here.

The Fifth Circuit in *Paxton*, 95 F.4th 263, held that the age-verification component of the statute was constitutional, and the plaintiffs did not seek a stay in that court. Therefore, the "status quo" at the time the Supreme Court was presented with the stay motion was that the statute was not enjoined and was being enforced – and the plaintiffs therefore were already subjected to its burdens. The Supreme Court's summary decision without any comment or dissent merely left the case as it found it, leaving the parties no worse off than they had been.

Here, in contrast, the district court held that the statute was unconstitutional, and granted a preliminary injunction, enjoining it on First Amendment grounds and denying the motion to stay that injunction. The result, of course, is that the Indiana statute has never been in force, unlike the Texas statute. We have not yet had the opportunity to consider the appeal on the merits, and therefore, the current state in our case is that the plaintiffs have not been required to comply with the burdensome requirements of the Act. If we were to alter that status quo, we should do so only by considering the stay on the merits and determining that a stay is appropriate under that analysis. Otherwise, we impose a cost on the businesses and individuals that have to comply with the Act, and curtail their First Amendment rights, based solely on an unreasoned stay denial even though the only court decision as to this Indiana statute held that the burden is unconstitutional. And such a precedent could have drastic consequences in a future case where the economic burden of a statute was even greater,

by subjecting the parties to that burden while awaiting the Supreme Court's decision without ever considering the relative harms to the parties.

If we reached that conclusion after a careful analysis of the stay motion on the merits, the result would be justified. But to reach it for parity alone, when the cases are presented in opposite postures, accords too much weight to a one-sentence denial of a stay by the Supreme Court, and that is too thin a reed to support imposing what, in our case, have been deemed unconstitutional burdens. We should impose such burdens only after considering the standards appropriate to a stay appeal on the merits: the likelihood of success on the merits and existence of irreparable injury to the moving party, the injury to the other party if a stay is granted, and the public interest. *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020). The grant of a stay without proceeding through that analysis unjustifiably absolves the moving party of its burden of proof in its quest to upend the district court's denial of that stay.

A denial of a stay by the Supreme Court, which might turn on the relative harms to the parties and not the merits of the legal claim, is not a decision on the merits of the case, nor is a grant of certiorari. *Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960 (2009). By granting a stay of the district court's injunction here, and allowing enforcement of a law deemed unconstitutional by the district court, we give the Supreme Court's stay denial an impact beyond its precedential value. One could as easily argue that the Court's grant of certiorari signals a concern with the Fifth Circuit's determination of constitutionality, and favors leaving the district court's determination in place. Either approach is problematic, because neither the summary denial of the stay nor the grant of certiorari is a decision on the merits, nor should they be treated as such.

Although I do not support granting the motion, I am sympathetic to the argument that sometimes the most prudent and respectful course is to hold an appeal in abeyance until the Supreme Court's ruling, particularly in a situation such as the one before us involving functionally-identical statutes. *United States v. Tholl*, 895 F.2d 1178, 1180 n.4 (7th Cir. 1990). But a true abeyance here would be to freeze the proceedings in this case as is, retaining the status quo until the Supreme Court issues its decision. Holding proceedings in abeyance is also supportable, given that the grant of certiorari means that the likelihood of success component of the stay motion is up in the air. It is a legally-supportable approach that adequately defers to the Supreme Court's decision to consider the merits of the underlying issue here. For that reason, if we choose not to consider the motion before us on the merits, the more supportable approach would be to suspend proceedings until the Supreme Court issues its ruling, as we have done numerous times where a pending Supreme Court case may be dispositive. Summarily granting the stay and upending the status quo, and allowing a statute that the district

court has determined to be unconstitutional to take effect without holding the moving party to any burden of proof, should not be an option.

Accordingly, I respectfully concur in the decision to hold the proceedings in abeyance by deferring briefing until the Supreme Court's decision, and dissent from the decision to grant the stay.